VERMONT SUPERIOR COURT
Environmental Division
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org



Docket No. 23-ENV-00033

| | |
|---|---|
| **Pederzani Administrative Appeal** | **DECISION ON MOTIONS** |

This is an appeal of a March 2023 decision of a Town of Williston Development Review Board (DRB) decision reversing the Town of Williston Zoning Administrator's issuance of an administrative permit to Dawna Pederzani (Applicant) to operate a dog rescue as a home business at her residence of 170 Lamplite Lane, Williston, Vermont (the Property). Applicant appeals the DRB's decision to this Court. Adjacent property owner Kim Butterfield and a group of Williston residents[1] in the area around the Property each filed separate cross-appeals (together, Neighbors). Presently before the Court are the parties cross-motions for summary judgment.

### Legal Standard

To prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a), applicable here through V.R.E.C.P. 5(a)(2). When considering a motion for summary judgment, the nonmoving party receives the benefit of all reasonable doubts and inferences. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356. When considering cross-motions for summary judgment, the Court considers each motion individually

---

[1] These residents are Ron Bliss, Kim Butterfield, Stephanie Bliss, Michael Olson, Neil Kandel, Susan Kandel, Sanela Beric, Zada Beric, Mujo Beric, Jamie Bowling, Mike Kanfer, Jane Kanfer, Elvis Beric, Neira Valentic, Jessica Wilson, Susan Parente, Nedim Tuco, and Elma Tuco. The group asserts standing pursuant to 24 V.S.A. § 4465(b)(4), with Ron Bliss as the group's designee.

and gives the opposing party the benefit of all reasonable doubts and inferences.  City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332.  In determine whether there is any dispute over any material fact, "we accept as true allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material."  White v. Quechee Lakes Landowners' Ass'n, Inc., 170 Vt. 25, 28 (1999) (citation omitted); V.R.C.P. 56(c)(1)(A).

### Factual Background

We recite the following facts solely for the purposes of deciding the pending cross-motions.  These facts do not constitute factual findings, since factual findings cannot occur until after the Court conducts a trial.  Fritzeen v. Trudell Consulting Eng'rs, Inc., 170 Vt. 632, 633 (2000) (mem.).

1.  Applicant Dawna Pederzani owns property located at 170 Lamplite Lane, Williston, Vermont (previously defined as the Property) and lives in the residence thereon.

2.  The Property is in the Rural Zoning District as defined by the Williston Zoning Ordinance (WZO).[2]

3.  Applicant operates the Vermont English Bulldog Rescue, a dog rescue operation that, at least in part, operates at the Property (the Rescue).

4.  Vermont English Bulldog Rescue is formally organized with the State of Vermont as a non-profit organization.

5.  The Rescue has existed, in some capacity, at the Property for a number of years prior to the events giving rise to this appeal.

6.  Generally, Applicant receives a transport of rescued dogs to Williston,[3] some of which are adopted upon arrival and some are housed at the Property in advance of adoption.

7.  Since sometime in 2022, at most 7 dogs are at the Property at any given time.

---

[2] The Court notes that no party filed a complete copy of the WZO, or exhibits containing relevant excerpts of sections thereof.  While the parties do not dispute the relevant quotations of the WZO in the respective filings, the Court requests that parties in the future file an exhibit containing the applicable regulations when they seek to have the Court interpret a provision thereof.

[3] The parties dispute where the dogs are received in Williston.  Applicant asserts since 2022 she receives transported rescue dogs off-site.  Neighbors assert that since 2022 at least some dogs are still dropped off at the Property.  Because of the Court's conclusion in this matter, the dispute is immaterial.

8. Unpaid volunteers come to the Property to assist Applicant in the care of the rescued dogs.

9. Care of the dogs includes regular time outside.

10. This includes letting the dogs out in the Property's backyard while supervised and/or walking the dogs around the Lamplite Lane area.[4]

11. In September 2022, Applicant received a Notice of Violation regarding the operation of the Rescue at the Property.

12. In response, Applicant sought an "after-the-fact" zoning permit for the Resuce, which was denied by the DRB in November 2022.

13. Applicant appealed that denial to this Court, but subsequently dismissed her appeal.

14. Applicant filed a second application for a zoning permit for the Rescue with amended operations at the Property as a home business.

15. The Town Zoning Administrator issued the permit, which was appealed by Neighbors to the DRB.

16. The DRB subsequently overturned the Zoning Administrator's issuance of the permit.

17. Applicant, Ms. Butterfield and the § 4465(b)(4) group timely cross-appealed the DRB's decision to this Court.

## Discussion

Central to the pending cross-motions is whether the Rescue can be permitted as a "home business" in the RZD due to the Rescue's use of outdoor areas in its operation and assistance by volunteers. These issues are addressed in Applicant's Questions 3, 5, 7, and 8 and Neighbors' Question 2.

It is undisputed that home businesses are permitted in the RZD. In the RZD, the WZO contains restrictions on the location of the home business. Specifically:

> [T]he space used for the proposed home business shall be within the dwelling or in an accessory structure that complies with all of the requirements of this bylaw. Outdoor workspaces and the outdoor storage of materials, supplies, equipment, vehicles, or goods for sale are prohibited in the RZD . . . .

---

[4] The parties dispute the number of dogs that are in the backyard at any given time or walked together in the Lamplite Lane area. Due to the Court's conclusion in this matter, this dispute is immaterial.

WZO, Appendix G.

When interpreting a zoning ordinance, the Court applies the rules of statutory construction. In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262. First, we "construe the words according to their plain and ordinary meaning, giving effect to the whole and every party of the ordinance." Id. (citations omitted). In construing statutory or ordinance language, our paramount goal is to implement the intent of its drafters. Morin v. Essex Optical/The Hartford, 2005 VT 15, ¶ 7, 178 Vt. 29. We will therefore "adopt a construction that implements the ordinance's legislative purpose and, in any event, will apply common sense." In re Laberge Moto-Cross Track, 2011 VT 1, ¶ 8, 189 Vt. 578; see also In re Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22 (quoting Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 49, 195 Vt. 586 (1986)) ("Our goal in interpreting [a zoning regulation], like a statute, 'is to give effect to the legislative intent.'"). Moreover, we will not interpret zoning regulations in ways that lead to irrational results. See Stowe Club Highlands, 164 Vt. 272, 280 (1995) (refusing to interpret regulation such that it leads to irrational results). Finally, because zoning regulations limit common law property rights, we resolve any uncertainty in favor of the property owner. Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22. With these provisions of interpretation in mind, we turn to the applicable regulatory and statutory provisions.

The WZO is clear and unambiguous: home businesses are to occur inside in the RZD. Appendix G specifically states that home business spaces "shall be within the dwelling or accessory structure . . .." WZO, Appendix G. It goes on to state specific types of outdoor uses that are prohibited. Applicant argues that the intensity of the outdoor use associated with the Rescue (i.e., letting dogs into the backyard of the Property or walking through the Lampline Lane area) does not reach the level of what would constitute one of identified prohibited outdoor uses in Appendix G, such as a "workspace." The WZO, however, does not contain language that would allow for any level of intensity of outdoor use related to a home business because it says that home business operations "shall be within the dwelling or accessory structure." WZO, Appendix G. Functionally, Applicant would like the Court to read a de minimus exception to the mandate that home businesses occur inside in the RZD into the WZO to allow for the Rescue because it is

4

akin to other residents' use of their property for their pets. [5] The Court cannot read such an exemption into the WZO, particularly when its plain language of the WZO dictates that home business operations shall be inside in the RZD.[6]

It is undisputed that the Rescue's operation occurs outside the Property's dwelling unit daily when dogs are at the Property. This includes using the Property's backyard and the area around the Property to walk the dogs.[7] Thus, it is undisputed that the Rescue uses areas outside of the Property's dwelling or any accessory structure in connection with the home business use at a property in the RZD where home businesses may only occur inside. Thus, the Rescue is not approvable as a home business in the RZD and Neighbors are entitled to judgment as a matter of law. For this reason, we **GRANT** Neighbors' motions in this respect and **DENY** Applicant's in the same.

Having reached this conclusion, we must conclude that Applicant is not entitled to an administrative permit for the Rescue as a home business with its present operations. All other issues before the Court are, therefore, **MOOT**.

### Conclusion

For the forgoing reasons, we conclude that the Rescue operation uses areas outside of the Property's dwelling such that it cannot be an approvable home business in the RZD, which prohibits outdoor use in relation to home businesses. Thus, Neighbors' motions are **GRANTED** and Applicant's motion is **DENIED**. Having reached this conclusion, Applicant is not entitled to an

---

[5] The Court notes that a home business, in itself, is a form of de minimus exempted business use of a property that otherwise would be limited to residential uses. To read an additional de minimus exemption into the home business provisions in the RZD would be to impermissibly broaden the scope of allowable home business use in the district, contrary to the clear legislative intent.

[6] To the extent that Applicant asserts that the use is permissible in the RZD because "kennels" are identified as a home business, generally, in the WZO then the Rescue is approvable as a home business, the Court disagrees. While, generally, kennels may be a home business in Williston, in the RZD, specifically, outdoor operation of a home business is prohibited. A familiar cannon on construction directs that where there are two provisions of an ordinance, one specific and one general, that address the same subject, the specific must prevail. See In re Application of Lathrop Ltd. P'ship I, 2015 VT 49, ¶ 31, 199 Vt. 19. Thus, while generally kennels could be a home business under the WZO and a kennel use may imply some level of outdoor operation, the specific prohibition on outdoor operation of a home business must prevail in the RZD.

[7] Applicant's assert that concluding that the Rescue cannot walk dogs in the neighborhood is akin to concluding that delivery drivers cannot use the roads for commercial purposes. We decline to adopt such a broad interpretation of our conclusion and note that the Rescue's use of the neighborhood is an integral part of its operation and care for the dogs that it rescues.

administrative permit for a home business for the Rescue's current operations and all other issues before the Court are **MOOT**.

This concludes the matter before the Court. A Judgment Order accompanies this Decision.

Electronically signed January 31, 2024 in Burlington, Vermont pursuant to V.R.E.F. 9(D).

Thomas G. Walsh, Judge
Superior Court, Environmental Division